UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN RODRIGUEZ, | No. 2:20-cv-2399-JAM-EFB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| R. ENLERS, | |
| Defendant. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  Defendant has filed a motion for summary judgment on the grounds of failure to exhaust administrative remedies.  ECF No. 28.  For the reasons that follow, the motion must be granted.

**I.      Background**

Plaintiff filed this case on December 3, 2020 and filed the operative amended complaint on March 1, 2021.  ECF Nos. 1, 16.  He alleges that defendant Enlers retaliated against him in violation of the First Amendment on June 9, 2020, and again on August 14, 2020, by filing false Rules Violation Reports against plaintiff for having a sharp object in his cell.  (Plaintiff contended to prison officials that the sharp object was simply paint that was peeling from a shelf due to age.)  He also alleges that Enlers subjected him to excessive force in violation of the Eighth Amendment on an unspecified date by injuring plaintiff's hand in the food port of his prison cell.

1

## II. **Summary Judgment Standards**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters

which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to

demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with the motion for summary judgment, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 28-5; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### III.     Exhaustion Requirements

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under federal law] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a prisoner must file a grievance alerting prison officials to the

4

claims the plaintiff has included in the complaint with the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (the purpose of the exhaustion requirement is to give officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case"). All claims alleged by an inmate in a federal lawsuit against prison officials must be exhausted before the inmate files the lawsuit; unexhausted claims must be dismissed without prejudice. *Booth v. Churner*, 532 U.S. 731, 733-34 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (exhaustion must occur prior to filing suit and plaintiff may not exhaust while suit is pending.)

California has recently revised its prison grievance procedure, which is contained in title 15 of the California Code of Regulations, §§ 3480-3487. The new procedure applies to grievances received by state prisons on or after June 1, 2020.[1] Cal. Code. Regs. tit. 15, § 3480(a). Section 3481(a) provides that an inmate can "submit a written grievance containing one or more claims … to dispute a policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." *Id.,* § 3481(a). Section 3482(c) directs that an inmate must follow this procedure to submit a grievance:

> (1) type or print legibly on an official form CDCR 602-1 (03/20) or complete the form electronically, if available;
>
> (2) describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge;
>
> (3) describe any attempt to resolve the claim informally and, if there was such an attempt, provide the details of that attempt, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and the results of that attempt, to the best of the claimant's knowledge;

/////

---

[1] As all grievances pursued by plaintiff relevant to this case were filed after that date, the court will not summarize here the procedure in place prior to June 1, 2020. *See* ECF Nos. 16, 28-1.

(4) include all supporting documents available to the claimant related to the claim or identify to the best of the claimant's ability all relevant records with sufficient specificity for those records to be located; and

(5) sign and date the form CDCR 602-1 (03/20).

An inmate must submit the grievance within 30 days of the incident he is challenging. *Id.*, § 3482(b).

Once an inmate has submitted a CDCR 602-1, the Institutional or Regional Office of Grievances ("OOG") must provide a written decision that clearly explains the reasoning for its decision as to each claim contained in the grievance. *Id.*, § 3481(a). Within 30 days of the OOG decision, the inmate may appeal to the Office of Appeals ("OOA"), which must also provide a written decision to the inmate that clearly explains the reasoning for its decision as to each of the inmate's claims. *Id.*, §§ 3481(a), 3485(b). The regulations provide that the grievance is exhausted once the OOA completes its review. *Id.*, § 3486(m).

The regulations provide two principal time constraints on officials reviewing an inmate's grievance. First, an official who receives a grievance, either at the OOG or the OOA level of review, must provide the inmate with a notice of receipt within 14 days of filing. *Id.*, § 3483(f), 3486(f). The notice must include the date the grievance was received and the deadline for authorities to respond to the grievance. *Id.* The response deadline is provided in §§ 3483(i) for the OOG and 3486(i) for the OOA – both entities have 60 days from the date of receipt to issue their written responses to the grievance, unless a shorter time period is mandated by other law.

A defendant bears the burden of establishing that a plaintiff failed to exhaust an available administrative process. *Fordley v. Lizarraga*, __ F. 4th __, 2021 U.S. App. LEXIS 33395, at *15 (9th Cir. Nov. 10, 2021). If a defendant meets its initial burden to show failure to exhaust an available administrative process, the burden shifts to the plaintiff to show that the process was not available to him. *Id.*

An administrative remedy is not available (and thus exhaustion is not required) where: (1) the administrative process is a dead end because prison officials are consistently unable or unwilling to provide any relief via that process; (2) the process is so opaque that no ordinary

6

prisoner could navigate it; and (3) officials thwart the prisoner's attempts to use the process "through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016). The Ninth Circuit has held that a prison's complete failure to process a grievance renders the administrative process unavailable, and its failure to *timely* process a grievance may render the process unavailable depending on the circumstances. *Fordley*, 2021 U.S. App. LEXIS 33395, at *18, 24-25.

### IV. Analysis

Plaintiff filed his complaint in this court on December 3, 2021; thus, the court must determine whether he exhausted his retaliation and excessive force claims prior to that date, or whether the administrative process was not available to him to complete exhaustion as of that date.

#### A. Retaliation Claims

Plaintiff alleges that defendant retaliated against him on June 9, 2020, and August 14, 2020, by filing false rules violations reports against plaintiff. Defendant has produced evidence of four grievances plaintiff filed that are relevant to his retaliation claims. The court will address each grievance in turn.

##### 1. Log No. 40042

Plaintiff completed a form 602-1 on September 12, 2020, in which he alleged, among other things, that "C/O Enlers pre-meditated a 115 [rules violation report] when I did not do anything . . . [as] harassment all because I filed 602's." ECF No. 28-3 at 30. The OOG denied the grievance on November 3, 2020, but the response did not address plaintiff's claims against defendant. *Id.* at 36. Plaintiff appealed the decision to the OOA on November 16, 2020. ECF No. 28-4 at 15. The OOA wrote in a letter dated January 16, 2021, that time had expired for it to act on the appeal and thus the OOG's determination constituted authorities' final decision. *Id.* According to defendant, however, this letter was not provided to plaintiff until March 15, 2021.

Defendant asserts that Log No. 40042 was exhausted on March 15, 2021, when plaintiff was finally informed of the OOA's decision. But March 15, 2021, was nearly two months beyond the entity's 60-day window for responding to the grievance. If the court were to find that

7

exhaustion did not occur until that late date, it would essentially reward correctional authorities for failing to timely respond to the grievance. It is reasonable to infer[2] that this failure to timely respond rendered the administrative appeal unavailable as early as January 15, 2021 (the date the 60-day response window expired). However, plaintiff filed this case on December 3, 2020, when a timely response from OOA was still a possibility.

It also reasonable to infer that the administrative remedy was rendered unavailable by the OOG's complete failure to respond to plaintiff's allegations against defendant (it instead focused on plaintiff's claims against other correctional officers also included in the grievance). Nonetheless, this oversight could have been remedied through the OOA appeals process, which remained available as of December 3, 2020. Thus, on the date this action was filed, it was possible that the OOA could timely respond to plaintiff's allegations against defendant. Because plaintiff filed suit before the earliest date on which that administrative remedy could be considered unavailable, plaintiff did not properly complete exhaustion of his retaliation claims against defendant prior to filing in Log No. 40042.

### 2. Log No. 50661

Plaintiff completed a form 602-1 on October 19, 2020, in which he alleged that defendant improperly put things in plaintiff's cell and had given plaintiff false rules violation reports in the past. ECF No. 28-3 at 45-46. The OOG denied this grievance on November 24, 2020. *Id.* at 52. Plaintiff did not appeal the denial to the OOA; thus, the grievance did not exhaust his retaliation claims. ECF No. 28-4 at 11.

### 3. Log No. 54861

Plaintiff completed a form 602-1 on November 2, 2020, in which he alleged that defendant issued him a false rules violation report on August 14, 2020 to get plaintiff punished. ECF No. 28-3 at 67-69. The OOG denied the grievance on November 13, 2020. *Id.* at 72. The

---

[2] Plaintiff's opposition briefing fails to present any meaningful arguments or evidence on the question of exhaustion. His initial opposition brief claims only that he followed the new exhaustion process as advised by prison officials but contains no explanation of why he filed this suit before the time for the OOA to act on his grievance expired. ECF No. 31. His second opposition brief does not address the exhaustion issue at all. ECF No. 45.

OOA received plaintiff's appeal on December 14, 2020. ECF No. 28-4 at 38. Under CDCR regulations, the OOA had until February 12, 2021, to respond. On February 24, 2021, the OOA completed a letter to plaintiff informing him that the time for it to act on the appeal had expired, and thus the OOG's response constituted the final determination. *Id.* The OOA failed to provide this letter to plaintiff, however, until July 7, 2021, nearly five months past the deadline. *Id.* at 4. Defendant again contends that the too-late date on which it provided the letter to plaintiff was the date exhaustion occurred. Again, the court rejects this contention, because it turns prison officials' dereliction to their own benefit. However, plaintiff filed suit on December 3, 2020, before he had even submitted the appeal to the OOA. Because, at time of filing, plaintiff still had an administrative remedy available because the time for the OOA to act had not expired, he did not exhaust his retaliation claims prior to filing through Log No. 54861.

### 4. Log No. 59654

Plaintiff completed a 602-1 on November 18, 2020, in which he complained that custody staff had abused the rules violation report process to retaliate against plaintiff for his grievances against defendant. ECF No. 28-3 at 95. The OOG rejected the grievance on November 24, 2020, because the hearings on the relevant rules violation reports had not yet occurred. *Id.* at 96. Plaintiff has not argued nor produced evidence that this rejection was inappropriate. *See Sapp v. Kimbrell*, 623 F.3d 813, 823-24 (9th Cir. 2010) (completion of the exhaustion process is not required where a prisoner shows that a relevant grievance was improperly rejected). Accordingly, Log No. 59654 cannot be considered to have exhausted plaintiff's retaliation claims.

In sum, defendant has presented evidence that plaintiff failed to exhaust his administrative remedies regarding his retaliation claims prior to filing this suit on December 3, 2020. Plaintiff has not submitted contravening evidence nor evidence to show the administrative remedies were unavailable to him. Accordingly, plaintiff's retaliation claims must be dismissed without prejudice for failure to exhaust prior to filing suit.

/////

/////

/////

### B. Excessive Force Claim

Plaintiff alleges that defendant used excessive force against him through the food port of his cell door. Defendant has produced evidence of three grievances filed by plaintiff that are relevant to this claim, which the court will address in turn.

#### 1. Log No. 58182

Plaintiff completed a 602-1 on November 15, 2020 in which he claimed that defendant used force against him on November 12, 2020 when plaintiff held the food port of his cell door open. ECF No. 28-3 at 81. The OOG denied the grievance on December 31, 2020. *Id.* at 86. Plaintiff's appeal was received by the OOA on January 27, 2001. ECF No. 28-4 at 67. The OOA concluded that the OOG had not adequately investigated plaintiff's excessive force claim and directed that entity to open a new grievance to address the claim on March 22, 2021. *Id.* As plaintiff filed this case on December 3, 2020 – while the grievance was still pending with the OOG – Log No. 58182 did not exhaust plaintiff's excessive force claim prior to filing.

#### 2. Log No. 123539

Log No. 123539 was opened by the OOG in response to the OOA's direction in Log No. 58182. The OOG denied the claim on July 13, 2021. Neither this grievance, nor the grievance that spawned it, were exhausted as of the December 3, 2020 filing date.

#### 3. Log No. 61014

Plaintiff completed a 602-1 on November 23, 2020, alleging that defendant had fought with plaintiff through the food port and that custody staff Crawford had tried to cover it up during the investigation into plaintiff's grievance against defendant (presumably Log No. 58182). ECF No. 28-3 at 104. The OOG denied the grievance on December 8, 2020, and the OOA denied plaintiff's appeal on March 10, 2021. *Id.* at 106; ECF No. 28-4 at 89. Plaintiff filed this suit before the OOG completed its timely review of the grievance; accordingly, he did not properly exhaust the excessive force claim through Log No. 61014.

Again, defendant has produced evidence showing that plaintiff did not properly exhaust his excessive force claim before he filed this suit. As pre-filing exhaustion is required by federal law, the claim must be dismissed without prejudice.

### V. **Recommendation**

For those reasons, the court finds that plaintiff failed to exhaust his administrative remedies prior to filing suit. Because the case must be dismissed on exhaustion grounds, the court need not address plaintiff's pending motion concerning discovery of evidence relevant to the merits (ECF No. 41). Accordingly, it is hereby RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 28) be granted, and the case dismissed without prejudice for failure to exhaust prior to filing suit;
2. Plaintiff's motion for access to documents (ECF No. 41) be denied as moot; and
3. The Clerk be directed to enter judgment accordingly and close the case

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 25, 2022.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE